# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____ )
)
NATURAL RESOURCES DEFENSE )
COUNCIL, INC. )
40 West 20th Street )
New York, NY 10011 )
)
ANGLERS CONSERVATION NETWORK )
9 Williamsburg Drive )
Tinton Falls, NJ 07753 )
)
DELAWARE RIVER SHAD FISHERMEN'S )
ASSOCIATION )
2440 West Columbia Street )
Allentown, PA 18104 )
)
GREAT EGG HARBOR RIVER COUNCIL )
175 9th Street )
Newtonville, NJ 08346 )          Civil Action No. _____
)
GREAT EGG HARBOR WATERSHED )
ASSOCIATION )
175 9th Street )
Newtonville, NJ 08346 )
)
                    Plaintiffs, )
)
          v. )
)
EILEEN SOBECK, in her official capacity )
as Assistant Administrator for Fisheries, )
National Marine Fisheries Service )
1315 East-West Highway )
Silver Spring, MD 20910 )
)
KATHRYN SULLIVAN, in her official )
capacity as Administrator, )
National Oceanic and Atmospheric Administration )
1401 Constitution Avenue NW, Room 5128 )
Washington, DC 20230 )
)
)

PENNY PRITZKER, in her official capacity          )
as Secretary of Commerce,                         )
United States Department of Commerce              )
1401 Constitution Avenue NW                       )
Washington, DC 20230                              )
                                                  )
NATIONAL MARINE FISHERIES SERVICE                 )
1315 East-West Highway                            )
Silver Spring, MD 20910                           )
                                                  )
                              Defendants.          )
                                                  )
_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      Blueback herring (*Alosa aestivalis*) are silver, foot-long anadromous fish that once spawned in huge numbers in rivers along the Atlantic coast.  Spending most of their adult lives at sea, blueback herring return to the rivers where they hatched to lay eggs for the next generation.  Native Americans and early European settlers harvested blueback herring during spring spawning runs, when rivers would turn silver with churning bluebacks heading upstream.  For over 300 years, blueback herring provided food for humans, birds, marine mammals, and other fish, and played a crucial role in Atlantic coastal ecosystems.  Now, due to habitat destruction, fishing, water pollution, and a range of other factors, blueback herring populations have been reduced to tiny fragments of their original sizes.

2.      Recognizing the dire condition of this species, in August 2011, Plaintiff Natural Resources Defense Council ("NRDC") petitioned the U.S. Secretary of Commerce to list blueback herring as threatened under the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, and

to designate critical habitat for the species.  Plaintiffs Anglers Conservation Network, Delaware River Shad Fishermen's Association, Great Egg Harbor River Council, and Great Egg Harbor Watershed Association Trustees were supportive of the petition and its goal of recovering blueback herring.

3.      Two years later, on August 12, 2013, Defendant Penny Pritzker, the U.S. Secretary of Commerce, acting through her designees Kathryn Sullivan, Administrator of the National Oceanic and Atmospheric Administration, Eileen Sobeck, Assistant Administrator for Fisheries, and the National Marine Fisheries Service (collectively "the Secretary") denied the petition, determining that listing blueback herring under the Endangered Species Act was not warranted, either on a species-wide basis or as distinct population segments.  *See* Endangered Species Act Listing Determination for Alewife and Blueback Herring, 78 Fed. Reg. 48,944-94 (Aug. 12, 2013).

4.      The Secretary's listing decision violated the Endangered Species Act, as well as the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*  The Secretary's listing decision analyzed the extinction risk for blueback herring in an arbitrary and capricious manner, was not based on the best scientific information available, failed to consider properly whether the blueback herring species is threatened throughout a significant portion of its range, and did not adequately address whether one or more distinct population segments of blueback herring should be listed as threatened.

5.      To remedy these violations, Plaintiffs have filed the instant action.  Plaintiffs seek judicial relief, including a declaration that the Secretary violated the Endangered Species Act and the Administrative Procedure Act, and a remand of the Secretary's listing determination.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and

(g) (Endangered Species Act citizen suit provisions), 5 U.S.C. §§ 701-706 (judicial review of

agency action), and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      The relief requested may be granted under 28 U.S.C. §§ 2201-2202 (declaratory

and injunctive relief), 16 U.S.C. § 1540(g) (Endangered Species Act citizen suit remedies), and 5

U.S.C. § 706(2) (allowing courts to "hold unlawful and set aside" agency actions).

8.      Pursuant to 16 U.S.C. § 1540(g)(2), Plaintiffs provided the Secretary with written

notice of their intent to file this suit.  That notice was provided more than sixty days prior to the

commencement of this action.  A copy of Plaintiffs' notice letter is attached as Exhibit A.

Defendants provided a written reply to Plaintiffs' notice letter, but have not corrected their

violations of the law.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e), 16 U.S.C.

§ 1540(g)(3)(A), and 5 U.S.C. § 703, because two Defendants reside in this judicial district and a

substantial part of the events or omissions giving rise to the claims occurred in the District of

Columbia.

## PARTIES

10.      Plaintiff NRDC is a nationwide non-profit environmental organization, with more

than 100,000 members in the Atlantic coastal states.  NRDC's mission is to "safeguard the Earth:

its people, its plants and animals, and the natural systems on which all life depends."  Protecting

the oceans is one of NRDC's six strategic priorities, and NRDC actively works to improve the

management of marine and estuarine resources in Atlantic coastal states.  NRDC's members

regularly visit blueback herring habitat for recreational and related purposes, seek to view blueback herring in the wild, and are concerned about the drastic decline in the species' numbers and risk of extinction, as well as the species' diminished role in the ecosystem.

11.     Plaintiff Anglers Conservation Network is an association of recreational anglers based on the Mid-Atlantic coast.  Anglers Conservation Network engages in outreach and education among the fishing community, promoting conservation and responsible fishing practices.  Members of Anglers Conservation Network derive significant enjoyment from fishing and from healthy river and marine ecosystems; as such, they have a strong interest in protecting and restoring populations of blueback herring in the Mid-Atlantic region.

12.     Plaintiff Delaware River Shad Fishermen's Association is a non-profit organization that works to preserve, protect, and restore migratory fish to the Delaware River and its tributaries, through environmental education, aquatic habitat restoration, and policy advocacy. Members of the Delaware River Shad Fishermen's Association consist of sportsmen, conservationists, and people with an interest in healthy marine ecosystems.  Delaware River Shad Fishermen's Association members have a strong interest in maintaining viable blueback herring populations, due to the foundational role played by these fish in the aquatic ecosystem.

13.     Plaintiff Great Egg Harbor River Council ("the River Council") is an association of twelve local municipalities that share acreage in the Great Egg Harbor River designated Wild and Scenic River Corridor, along with one representative from the Great Egg Harbor Watershed Association.  The purpose of the River Council is to assist municipalities in effectively implementing the Great Egg Harbor National Scenic and Recreational River Comprehensive Management Plan as well as local river management plans.  The River Council has a strong

interest in protecting and restoring populations of blueback herring in the Great Egg Harbor

River area, due to the significant ecological role played by blueback herring in that area.

14.     Plaintiff Great Egg Harbor Watershed Association ("the Watershed Association")

is a non-profit organization dedicated to protecting and restoring the natural, cultural, and

recreational resources of the Great Egg Harbor River watershed.  The Watershed Association

engages in research, advocacy, and education related to the Great Egg Harbor River system, and

also coordinates the preservation of land in the watershed.  The Watershed Association has a

strong interest in protecting and restoring populations of blueback herring in the Great Egg

Harbor River, due to the significant ecological role played by blueback herring in that area.

15.     Defendant Eileen Sobeck, Assistant Administrator for Fisheries, is the highest-

ranking official within the National Marine Fisheries Service and, in that capacity, has

responsibility for the administration and implementation of the Endangered Species Act with

regard to blueback herring, and for compliance with all other federal laws applicable to the

National Marine Fisheries Service.  She is sued in her official capacity.

16.     Defendant Kathryn Sullivan, Administrator of the National Oceanic and

Atmospheric Administration, is the highest-ranking official within the National Oceanic and

Atmospheric Administration and, in that capacity, has responsibility for the administration and

implementation of the Endangered Species Act with regard to blueback herring, and for

compliance with all other federal laws applicable to the National Oceanic and Atmospheric

Administration.  She is sued in her official capacity.

17.     Defendant Penny Pritzker, United States Secretary of Commerce, is the highest-

ranking official within the Department of Commerce and, in that capacity, has ultimate

responsibility for the administration and implementation of the Endangered Species Act with

regard to blueback herring, and for compliance with all other federal laws applicable to the Department of Commerce.  She is sued in her official capacity.

18.     Defendant National Marine Fisheries Service ("NMFS") is a federal agency within the National Oceanic and Atmospheric Administration in the Department of Commerce, which is authorized and required by law to protect and manage the fish, marine mammals, and other marine resources of the United States, including enforcing and implementing the Endangered Species Act.  NMFS has been delegated authority by the Secretary of Commerce to implement the Endangered Species Act for blueback herring, and is responsible for making listing decisions, processing petitions for such actions, and promulgating related regulations.

19.     All Plaintiffs derive significant benefits—recreational, aesthetic, economic, cultural, or scientific—from blueback herring.  Defendants' failure to comply with federal law and list blueback herring as threatened under the Endangered Species Act will allow the further degradation and loss of blueback herring populations, irreparably harming blueback herring as well as the interests of Plaintiffs and their members and constituents.  Plaintiffs have no adequate remedy at law, and the relief requested in this action will redress their injuries.

LEGAL BACKGROUND

20.     The Endangered Species Act is a federal statute enacted to conserve endangered and threatened species and the ecosystems upon which they depend.  16 U.S.C. § 1531(b).  The Endangered Species Act is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 180 (1978).  The Supreme Court's review of the Act's "language, history, and structure" established "beyond doubt that Congress intended endangered species to be afforded the highest

of priorities." *Id.* at 174.  As the Supreme Court found, "the plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." *Id.* at 184.

21.     The Endangered Species Act protects species listed by the Secretary as either "endangered" or "threatened."  A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).  A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  16 U.S.C. § 1532(20).

22.     Section 4(a) of the Endangered Species Act requires the Secretary to determine whether a species is endangered or threatened due to any of the following five factors: (1) The present or threatened destruction, modification, or curtailment of its habitat or range; (2) overutilization for commercial, recreational, scientific, or educational purposes; (3) disease or predation; (4) the inadequacy of existing regulatory mechanisms; or (5) other natural or manmade factors affecting its continued existence. 16 U.S.C § 1533(a)(1).  The Secretary must make listing determinations solely on the basis of the best scientific and commercial data available.  16 U.S.C § 1533(b)(1)(A).

23.     The term "species" is defined broadly under the Endangered Species Act to include "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."  16 U.S.C § 1532(16).  A distinct population segment ("DPS") of a vertebrate species can be protected as a "species" under the Endangered Species Act even if it has not formally been described as a "species" in scientific literature.

24.     The Secretary has published a policy for the recognition of DPSs for the purposes of listing, delisting, and reclassifying species under the Endangered Species Act. *See* Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act, 61 Fed. Reg. 4722 (Feb. 7, 1996). Under this policy, once a population segment is found to be both "discrete" and "significant," it is deemed a separate "species" for the purposes of the Endangered Species Act and may be considered for listing under the Act.

25.     The Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, provides general rules governing the issuance of proposed and final regulations by federal agencies. Section 10 of the Administrative Procedure Act, 5 U.S.C. § 706, provides standards for judicial review of final agency action. Under that section, a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## FACTUAL BACKGROUND

### *Blueback Herring*

26.     Blueback herring are anadromous fish that reside offshore for most of the year and return to their natal rivers and streams to spawn. Adult bluebacks average 11 inches in length, and seven to eight ounces in weight. They have a dark bluish-green dorsal surface, and paler and silvery ventral surface and sides. Blueback herring can live up to 10 years, with most females reaching sexual maturity at four to five years of age.

27.     Blueback herring historically played an important role in the dynamics of food chains in freshwater, estuarine, and marine ecosystems. While at sea, blueback herring provide food for many species, including sharks, tunas, mackerel, and marine mammals like porpoises

and dolphins.  In fresh and brackish waters, eels and bass consume both adult and juvenile
blueback herring.  Osprey, eagles, and other fish-eating birds feed on spawning migrations of
blueback herring; these birds may have evolved their late winter and spring nesting strategies in
response to the availability of food resources supplied by pre- and post-spawning alosines like
blueback herring.  Blueback herring also provide cover for upstream-migrating adult salmon that
may be preyed on by eagles or osprey, and for young salmon in estuaries and the open ocean that
might otherwise be eaten by seals.

28.     Blueback herring populations along the Atlantic coast also bring vital nutrients
and carbon into riverine systems through post-spawning mortality.  Nutrients released from
carcasses of post-spawning alosines such as blueback herring can substantially subsidize aquatic
food webs by stimulating productivity of bacteria and aquatic vegetation, hastening the
assimilation of marine-derived nutrients into aquatic invertebrates and fish.

29.     Blueback herring once were highly abundant in the coastal waters, rivers and
streams of the eastern United States.  In larger rivers, spawning runs could reach well into the
millions of individual fish.  Even as recently as the middle of the twentieth century, blueback
herring populations existed at relatively high levels and supported significant human fisheries.
From 1950 through 1970, total commercial landings of blueback herring and closely-related
alewives—collectively known as river herring—in Atlantic coastal states averaged more than 50
million pounds per year.

30.     Today, due primarily to the impacts of dams and habitat destruction, overfishing,
and water pollution, blueback herring are reduced to tiny remnant runs.  The commercial fishery
has collapsed, with annual coastwide landings of alewives and blueback herring averaging just
over a million pounds from 2000 to 2009—a decline of more than 98 percent from the 1950 to

1970 average.  The river herring fisheries of Chesapeake Bay and its tributaries—historically the

country's largest fishery and predominantly comprised of blueback herring—have been virtually

eliminated.  Landings from North Carolina's Albemarle Sound and its tributaries, which once

rivaled those from Chesapeake Bay, have dropped precipitously as well.

31.     In many cases, blueback herring declines have continued or even accelerated in

the last decade, despite fishery closures and restrictions.  For example, the huge blueback herring

run in the Connecticut River, which averaged 5.4 million fish annually from 1981 to 1995,

dropped to just over one million fish per year on average from 1996 to 2001, and then to just

over 300,000 fish per year on average between 2002 and 2008—an overall decline of almost 95

percent.

*NRDC's Listing Petition and the Status Review*

32.     Recognizing the dire situation of blueback herring, NRDC petitioned the

Secretary in August 2011, requesting the species be listed as threatened under the Endangered

Species Act or, in the alternative, that distinct population segments be designated and each listed

as threatened species.  NRDC also petitioned for the listing of alewife as threatened; Plaintiffs do

not challenge NMFS's conclusions with respect to alewife in this lawsuit.

33.     In the petition, NRDC detailed the precipitous decline of blueback herring, as well

as the causes of this decline and the ongoing threats facing the species, including fishing, dams

and other spawning impairments, and water pollution.  NRDC also explained why government

responses to these threats have been inadequate.

34.     In response to NRDC's petition, the Secretary published a 90-day finding on

November 2, 2011, determining that the petition presented substantial scientific information

indicating the petitioned action may be warranted.  *See* 90-Day Finding on a Petition to List

Alewife and Blueback Herring as Threatened Under the Endangered Species Act, 76 Fed. Reg. 67,652.  The 90-day finding announced initiation of a Status Review and opened a comment period for interested parties.  To conduct the Status Review, NMFS convened a Status Review Team, comprised entirely of agency personnel.

*NMFS's Listing Decision*

35.     On August 12, 2013, NMFS published its determination that listing blueback herring was not warranted, either on a species-wide basis or as distinct population segments.  *See* Endangered Species Act Listing Determination for Alewife and Blueback Herring, 78 Fed. Reg. 48,944.  NMFS did not prepare or publish a Status Review report to accompany the listing decision, as is the normal agency practice.

36.     The listing decision relied significantly on a quantitative analysis of recent blueback herring population trends.  *See* Northeast Fisheries Science Center, *Analysis of Trends in Alewife and Blueback Herring Relative Abundance: Report to the NMFS River Herring Status Review Team* (2013) ("Trends Analysis").  The Trends Analysis and other key components of the status review did not undergo independent peer review consistent with agency guidance and policy.  *See* NMFS, *OMB Peer Review Bulletin Guidance* (2011); Final Information Quality Bulletin for Peer Review, 70 Fed. Reg. 2664 (Jan. 14, 2005); Endangered and Threatened Wildlife and Plants: Notice of Interagency Cooperative Policy for Peer Review in Endangered Species Act Activities, 59 Fed. Reg. 34,270 (July 1, 1994).  The listing decision stated that it also relied on a 2012 Benchmark Stock Assessment for river herring conducted by the Atlantic States Marine Fisheries Commission.  *See* 78 Fed. Reg. at 48,946.

37.     In the listing decision, NMFS acknowledged that blueback herring biomass "may already be at or less than two percent of the historical baseline."  *Id.* at 48,987.  NMFS also noted

that declines had continued in recent years in a number of rivers.  *Id.* at 48,947-48.  Furthermore, almost every available measure—commercial-catch-per-unit effort; run counts; young-of-the-year surveys; fisheries-independent seine, gillnet, electrofishing, and trawl surveys; mean length; frequency of repeat spawners; mortality; and exploitation rates—indicated that blueback herring populations have declined or were in decline in virtually every river along the Atlantic Seaboard.  *See id.* at 48,946-47.

38.     The listing decision outlined the key threats to blueback herring, which include extensive habitat degradation and lack of habitat availability—primarily resulting from dams and other barriers to spawning habitat but also from the destruction of wetlands and degraded water quantity and quality.  *Id.* at 48,953-58, 48,971.  Another significant threat identified in the listing decision is incidental catch in small mesh fisheries, including the Atlantic herring and mackerel fisheries.  *Id.* at 48,960-61, 48,964, 48,970-71.  Additional threats include climate change and climate variability, inadequate existing management measures, predation, and hybridization.  *Id.* at 48,979-84.

39.     Finally, the listing decision incorporated the modeling results of the Trends Analysis, which found maximum likelihood estimates of current population trajectories to be decreasing for three out of four regional populations.  *Id.* at 48,991.  The decreasing trend of the largest population—the Mid-Atlantic—was established with 95 percent certainty.  *Id.*

*NMFS's Determination of Species-Wide Extinction Risk*

40.     To evaluate the overall extinction risk faced by blueback herring, NMFS created and applied a two-tier test.  "Tier A" of the test considered how species viability relies on geographic distribution, habitat connectivity, and genetic diversity, and asked whether or not each species has three or more contiguous regional populations with either "stable" or increasing

trends, based on the Trends Analysis.  *Id.* at 48,986.  Tier A was designed to ensure that a species is not at excessive extinction risk because of the lack of a "properly functioning metapopulation."  *Id.*  In particular, the Tier A test was intended to determine whether a species has isolated genetic groups that could lead to genetic divergence, the ability to persist across a wide and diverse geographic area, or a risk of localized extinction events.  *Id.*

41.     Applying Tier A to blueback herring, NMFS stated in the listing decision that there was "insufficient information" to make a conclusion, even though information was available for four out of five populations and, of those four, no three contiguous populations were stable or increasing according to the Trends Analysis.  *Id.* at 48,992.  NMFS failed to acknowledge that blueback herring had failed its own Tier A test.  *Id.*

42.     Because NMFS failed to utilize the Tier A test for blueback herring, the agency failed to consider adequately metapopulation dynamics, genetic divergence, the ability to persist across a wide and diverse geographic area, or the risk of localized extinction events in evaluating the species' extinction risk.

43.     For "Tier B" of the test, NMFS assigned a risk level to each species based on how many and which population trajectories the agency considered to be increasing, "stable," or decreasing.  *Id.* at 48,986-87.  Tier B was intended to evaluate the risk of negative population trends resulting in population collapse and extinction.  *Id.*

44.     The Tier B test relied upon the label of "stable" (from the Trends Analysis) as actually indicating a stable population trend, and as representing a relatively low risk of extinction.  The Trends Analysis, however, labeled any population as "stable" if the data for that population failed to show an increasing or decreasing trend to a level of 95 percent certainty.

45.     According to the Trends Analysis, one blueback herring population—the Mid-Atlantic—is decreasing with greater than 95 percent certainty.  Two other populations—Southern New England and Northern New England—are estimated to be decreasing, although with less than 95 percent certainty.  These two populations were labeled as "stable."

46.     NMFS provided no basis or explanation for demanding 95 percent certainty in order to label a population as increasing or decreasing.  The agency similarly provided no rationale for labeling a population "stable" when its trend had less than 95 percent certainty.

47.     For blueback herring, the Tier B test—which relied on the labels applied by the Trends Analysis—was the sole analytic tool used by NMFS for determining the likelihood of the species becoming endangered in the foreseeable future.

48.     As a result of labeling the Southern New England and Northern New England populations "stable," NMFS concluded that blueback herring is at a "moderate-low" risk of extinction.  Had the agency used the maximum likelihood estimates of trend for these populations, instead of arbitrarily requiring 95 percent certainty, both populations would have been labeled as declining and blueback herring would have been evaluated by the Tier B test as having a "moderate-high" risk of extinction.

49.     This two-tier test, and the agency's application of it to blueback herring, was arbitrary and capricious and failed to use the best scientific information available.

50.     Based on its flawed analysis, NMFS concluded that blueback herring is not likely to become in danger of extinction in the foreseeable future and that listing as threatened throughout the species' range is not warranted.  *Id*. at 48,992.  NMFS made this determination even though populations of blueback herring are at historic lows, three of the four blueback herring populations with available data have a maximum likelihood estimate of population

trajectory that is still decreasing, and the most important population, the Mid-Atlantic

population, is decreasing with 95 percent certainty according to the Trends Analysis.

51.     NMFS's determination that blueback herring is not likely to become in danger of

extinction in the foreseeable future also ignored other scientific information and analyses in the

record, including expert opinion, which further demonstrated blueback herring is likely to be in

danger of extinction in the foreseeable future.

*NMFS's Determination of Extinction Risk for a "Significant Portion of Its Range"*

52.     In the listing decision, NMFS also evaluated whether any portion of blueback

herring's overall range constituted a "significant portion" of the species' range. *Id.* In

conducting this evaluation, NMFS stated that it was applying its draft "significant portion of its

range" policy, which at the time of the listing decision had been proposed jointly with the Fish

and Wildlife Service. *Id.* at 48,952-53. After the listing decision, NMFS and the Fish and

Wildlife Service finalized the policy. *See* Final Policy on Interpretation of the Phrase

"Significant Portion of Its Range" in the Endangered Species Act's Definitions of "Endangered

Species" and "Threatened Species," 79 Fed. Reg. 37,578 (July 1, 2014).

53.     Based on its evaluation, NMFS concluded that no portion of blueback herring's

range is "significant."  78 Fed. Reg. at 48,993.  This conclusion specifically included the Mid-

Atlantic population, despite that population's considerable spatial extent both currently and

historically, its comparatively large spawning runs, and its unique genetic variation. *Id.*

54.     Because NMFS concluded that no portion of blueback herring's range is

"significant," the agency concluded that blueback herring is not threatened in a "significant

portion of its range," and that listing on this basis was not warranted. *Id.*

55.     NMFS's "significant portion of its range" evaluation for blueback herring, and the resulting determination, was based on flawed statutory interpretations.  NMFS interpreted the word "significant" as requiring a portion of the species' range to be so important that, without its existence, the entire species would be in danger of extinction.  *Id.* at 48,952-53.  In violation of the ESA, this reads the phrase "significant portion of its range" out of the statute.  This interpretation also applies the incorrect standard, as it requires blueback herring to be endangered (i.e., in danger of extinction) in a significant portion of its range, rather than simply threatened (i.e., likely to become endangered) in a significant portion of its range.  Also contrary to law, NMFS declined to consider the historical range of blueback herring in its evaluation.  *Id.*

56.     In addition to relying on erroneous statutory interpretations, NMFS also applied its draft "significant portion of its range" policy to blueback herring in an arbitrary manner.

57.     The agency's draft policy requires consideration of the biological concepts of resiliency, redundancy, and representation of the species in assessing significance.  *See* Draft Policy on Interpretation of the Phrase "Significant Portion of Its Range" in the Endangered Species Act's Definitions of "Endangered Species" and "Threatened Species," 76 Fed. Reg. 76,987, 76,994 (Dec. 9, 2011).  The final policy requires evaluation of the same considerations. 79 Fed. Reg. at 37,581.

58.     In the blueback herring listing determination, NMFS did not adequately consider resiliency, redundancy, and representation.  For example, NMFS provided no evaluation of why the Mid-Atlantic population of blueback herring—which was shown to be declining with a 95 percent certainty level—is not significant when considering resiliency, redundancy, and representation.  NMFS's conclusion that this region does not constitute a "significant portion" of the blueback herring's range—and therefore that blueback herring is not threatened in a

significant portion of its range—runs counter to the evidence and represents an arbitrary

application of the agency's own policy.

*NMFS's Determination of No Distinct Population Segments*

59.     NMFS declined to designate DPSs for blueback herring.  Although the agency

determined that the four regional populations of blueback herring are "discrete" under the DPS

Policy, it concluded that none of the discrete populations—including the Mid-Atlantic

population—are "significant."  *See* 61 Fed. Reg. at 4722 (requiring that a distinct population

segment be both "discrete" and "significant"); 78 Fed. Reg. at 48,948-50.

60.     The DPS policy requires analysis of each population segment's significance based

on: (1) persistence of the discrete population segment in an ecological setting unusual or unique

to the taxon; (2) evidence that loss of the discrete population would result in a significant gap in

the range of the taxon; (3) evidence that the discrete population segment represents the only

surviving natural occurrence of a taxon that may be more abundant elsewhere as an introduced

population outside of its historical range; and (4) evidence that the discrete population segment

differs markedly from other populations of the species in its genetic characteristics.  61 Fed. Reg.

at 4725.

61.     In the listing decision, NMFS failed to consider these factors adequately.  Had it

done so, NMFS would have concluded that the Mid-Atlantic blueback herring population (and

potentially others) qualified as a DPS.

62.     First, the Mid-Atlantic blueback herring population encompasses unusual or

unique ecological settings.  Such separate and distinct ecoregions have served as the basis for

finding significance for other species.  *See, e.g.*, 75 Fed. Reg. 61,872, 61,877 (Oct. 6, 2010)

(Atlantic sturgeon).

63.     Second, the loss of the Mid-Atlantic population would result in a significant gap in the species' range.  The population spans from the Connecticut River to North Carolina's Neuse River, approximately one-half of the species' U.S. range, and includes the largest historical and current river-specific spawning populations.  NMFS ignored ample evidence in the record, including expert opinion, in support of this qualifying factor for significance.

64.     Third, the Mid-Atlantic blueback herring population differs from the other regional populations in its genetic characteristics.  The record clearly shows differentiation in terms of neutral genetic markers such as microsatellites.  *E.g.*, 78 Fed. Reg. at 48,950. NMFS ignored this evidence in support of significance.

65.     In the listing decision, NMFS made two assertions in support of its failure to find significance: first, the agency stated it "expects that [blueback herring] would recolonize neighboring systems over a relatively short time frame" in the event of the loss of the Mid-Atlantic population, and second, it stated that the inquiry into genetic differences should be focused on adaptive gene distinctiveness and observed differences in behavior, rather than on standard measures of genetic distinctiveness.  78 Fed. Reg. at 48,950.  Neither of these assertions is supported by the record, case law, or agency practice.

66.     NMFS's decision not to designate at least a Mid-Atlantic blueback herring DPS was arbitrary, capricious and not in accordance with law, and failed to use the best scientific information available.


FIRST CLAIM FOR RELIEF

67.     Each and every allegation set forth in the preceding paragraphs is incorporated herein by reference.

68.     Defendants violated the Endangered Species Act, its implementing regulations, and the Administrative Procedure Act when they failed to list blueback herring as threatened throughout its range under the Endangered Species Act.

## SECOND CLAIM FOR RELIEF

69.     Each and every allegation set forth in the preceding paragraphs is incorporated herein by reference.

70.     Defendants violated the Endangered Species Act, its implementing regulations, and the Administrative Procedure Act when they failed to list blueback herring as threatened in a significant portion of its range under the Endangered Species Act.

## THIRD CLAIM FOR RELIEF

71.     Each and every allegation set forth in the preceding paragraphs is incorporated herein by reference.

72.     Defendants violated the Endangered Species Act, its implementing regulations, and the Administrative Procedure Act when they failed to designate any distinct population segments for blueback herring under the Endangered Species Act.

## PRAYER FOR RELIEF

73.     Plaintiffs respectfully request that this Court enter judgment providing the following relief:

A.      Declare that the Defendants violated the Endangered Species Act by failing to list blueback herring, or one or more distinct population segments of blueback herring, as threatened;

B.      Declare that the Defendants violated the Administrative Procedure Act by failing to list blueback herring, or one or more distinct population segments of blueback herring, as threatened;

C.      Remand the Listing Determination and order the Defendants to prepare a new Listing Determination that complies with the Endangered Species Act and the Administrative Procedure Act, within six months of this Court's order;

D.      Retain jurisdiction over this matter until such time as Defendants have complied fully with the Court order;

E.      Grant Plaintiffs their costs of suit, including reasonable attorney fees; and

F.      Grant Plaintiffs such further relief as is necessary and appropriate.

Respectfully submitted this 10th day of February, 2015.


/s/Aaron Colangelo
Aaron Colangelo (DC Bar No. 468448)
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
Tel.:  202-289-6868
Fax:  202-289-1060
acolangelo@nrdc.org

Counsel for Plaintiff
NATURAL RESOURCES DEFENSE
COUNCIL, INC.

/s/Roger Fleming
Roger Fleming (DC Bar No. ME0001)*
Erica A. Fuller (DC Bar No. MA0001)*
Earthjustice
1625 Massachusetts Avenue NW, Suite 702
Washington, DC 20036
Tel.:  202-667-4500
Fax:  202-667-2356
rfleming@earthjustice.org
efuller@earthjustice.org

Kristen L. Boyles (WA Bar No. 23806)*
705 Second Avenue, Suite 203
Seattle, WA 98104
Tel.: (206) 343-7340
Fax: (206) 343-1526
kboyles@earthjustice.org

Counsel for Plaintiffs
ANGLERS CONSERVATION
NETWORK, DELAWARE RIVER SHAD
FISHERMEN'S ASSOCIATION, GREAT
EGG HARBOR RIVER COUNCIL, and
GREAT EGG HARBOR WATERSHED
ASSOCIATION TRUSTEES


*Not admitted to the District of
Columbia Bar.  Representation is limited to
a Federal Court of the United States.